UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FITCH, EVEN, TABIN & FLANNERY LLP<br><br>Plaintiff,<br><br>v.<br><br>LED WAFER SOLUTIONS LLC AND RALPH SUTTON<br><br>Defendants. | Civil Action No. 1:25-cv-_____<br><br><u>Jury Trial Demanded</u> |

**COMPLAINT**

1. Plaintiff Fitch, Even, Tabin & Flannery LLP ("Fitch Even") hereby files this Complaint against Defendants LED Wafer Solutions LLC ("LWS") and Ralph Sutton ("Mr. Sutton").

**I. NATURE OF THE ACTION**

2. This is an action for breach of contract and fraudulent misrepresentation.

**II. PARTIES**

3. Plaintiff Fitch Even is a limited liability partnership law firm formed under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. All of Fitch Even's equity partners are attorneys and none of them are domiciled in the states of Delaware, New York, or Texas or in the country of Israel. Fitch Even has no equity partner that is an entity such as corporation, association, partnership, limited partnership, limited liability partnership or limited liability company.

4. Defendant LWS is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 7215 Bosque Blvd.,

1

Suite 156, Waco, TX 76710. Mr. Jeremy Pitcock founded LWS and was its sole member and managing member until around July 2025. On information and belief, Mordechai Margalit, an Israeli citizen, is the current sole member and managing member of LWS and is domiciled in Israel.

5. On information and belief, Mr. Sutton is domiciled in the State of New York

### III. JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendants because a substantial part of the events giving rise to this claim occurred in this District, and the operative contract between Fitch Even and LWS was executed in this District.

8. Also, under the operative contract between Fitch Even and LWS, LWS agreed to the governing law as the laws of the State of Illinois and to venue any disputes in Illinois.

9. On information and belief, Mr. Sutton, as CEO of Validity, had knowledge that LWS entered an agreement with Fitch Even, a law firm based in Chicago, Illinois and that the engagement agreement stipulated to the application and governance of Illinois law and venue. Mr. Sutton also directed his communications that form the basis of the fraud claim to Fitch Even which is a Chicago-based law firm located in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District, specifically the operative contract between Fitch Even and LWS having been executed in this District and selecting the governing law as the laws of the State of Illinois.

## IV. BACKGROUND

11. On March 25, 2021, LWS filed a complaint in the Western District of Texas, Waco Division, against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), Case No. 6:21-cv-00292.

12. On September 7, 2021, Seoul Semiconductor Co. Ltd. moved to intervene in the case.

13. On February 2, 2022, Mr. Ralph Sutton, CEO of Validity Finance, LLC ("Validity Finance") and VF Asset Holdings LLC ("VF") (Validity Finance and VF collectively "Validity"), contacted Mark Raskin ("Raskin"), then a partner of King & Wood Mallesons LLP ("KWM LLP"), about the possibility of working with LWS on various matters. Mr. Sutton stated that Validity was providing funding for the matters. Mr. Sutton introduced Mr. Raskin to Mr. Jeremy Pitcock of LWS.

14. On information and belief, the litigation funding agreement between Validity Finance, VF and LWS provided a fixed amount of funds pursuant to a budget provided by Carter Arnett LLP, a law firm working with LWS, to be used for patent litigation brought by LWS on certain enumerated patents owned by LWS. On information and belief, the funds provided under the litigation funding agreement between Validity and LWS could not be used for any other purpose or any other matter.

15. On February 3, 2022, Mr. Pitcock discussed his interest in retaining KWM LLP to take over litigation filed in China by LWS against Samsung, and to file a new case against another defendant. Mr. Pitcock also discussed the possibility of KWM LLP working on the LWS litigation then pending in the United States District Court for the Western District of Texas.

16. On February 8, 2022, Mr. Pitcock confirmed that "The Chinese litigation in LWS would be 100% paid at hourly rates, although I need a budget for the funder. Any US work would

3

be at half rates and you would share a contingency fee with Carter Arnett that you would discuss with them on the terms (I am generally amenable so long as the terms of my deal do not change)."

17. On February 9, 2022, Mr. Pitcock introduced Mr. Raskin to Mr. Bradley Liddle, a partner at the law firm Carter Arnett LLP. Carter Arnett was the law firm handling the LWS litigation pending in the Western District of Texas.

18. On February 12, 2022, Mr. Liddle sent Mr. Raskin the co-counsel agreement between Carter Arnett and the law firm Porter Hedges LLP for the LWS litigation pending in the Western District of Texas, Waco Division, against Samsung, Case No. 6:21-cv-00292. Mr. Liddle proposed to use the same structure for a co-counsel agreement between Carter Arnett and KWM LLP. In relevant part, this agreement noted that: "CA and PH ('Counsel') will be paid as follows according to the mutually acceptable funding agreement between Client and Validity Finance, proposed as follows in the term sheet . . . constituting fifty percent (50%) of the litigation fee budget for the Cases (to be attached to final funding documents) . . . . CA and PA [sic: PH] will each bill their time as Litigation Fees at 50% rates. . . ."

19. On February 18, 2022, Mr. Pitcock confirmed that "[o]n LWS, you have to work out something with Brad's firm [Carter Arnett], but if you are in for the Chinese case, you are in for Texas as well if you want."

20. On March 2, 2022, Mr. Raskin inquired whether Mr. Pitcock needed to confer with Mr. Sutton regarding the LWS engagement agreement. Mr. Pitcock replied "Strange coincidence -- I just spoke to Ralph . . . . He knows and approves of [your engagement with] LED Wafer -- he was the one who recommended you."

21. On March 9, 2022, Mr. Liddle sent a proposed engagement agreement to Mr. Raskin including terms of representation for the LWS matter. As with the co-counsel agreement between

4

Carter Arnett and Porter Hedges, this engagement agreement indicated that Validity Finance was providing litigation funding for the LWS litigation – "CA and KWM ('Counsel') will be paid as follows according to the mutually acceptable funding agreement between Client and Validity Finance, proposed as follows in the term sheet . . . . CA and PA [sic: KWM] will each bill their time as Litigation Fees at 50% rates."

22. On March 17, 2022, Mr. Pitcock informed Mr. Raskin that: "Brad, myself and the funder [Validity] all have approved of your engagement on the LWS matter."

23. On March 18, 2022, Mr. Liddle confirmed to Mr. Raskin that KWM LLP should execute the version of the co-counsel agreement sent by Mr. Liddle on March 9, 2022. Mr. Liddle sent a fully executed copy of the co-counsel agreement later that day.

24. On August 22, 2022, the Western District of Texas court granted a motion to transfer the case to the Northern District of California.

25. In late June 2024, Mr. Raskin joined Fitch Even. Mr. Raskin notified LWS of the move in July 2024. Mr. Raskin also notified Mr. Liddle of Carter Arnett and Mr. Sutton of Validity.

26. On July 19, 2024, Fitch Even prepared pitch materials for LWS, introducing Fitch Even and including a proposal to represent LWS in the Western District of Texas litigation (which was subsequently transferred to the Northern District of California). The proposal included a list of Fitch Even attorneys that could work on the matter, their hourly rates, and a budget for the case covering both attorneys' fees and expenses. The budget included a total based on undiscounted hourly rates. The budget also indicated an hourly fee total after applying a 50% discount, which would be applicable in the event the client wanted to enter into a hybrid fee structure in which Fitch Even would be paid 50% of its fees and receive a contingency percentage in the event of a successful outcome in the case.

27. On July 23, 2024, Fitch Even sent a draft engagement agreement to LWS directed to the hybrid fee arrangement.

28. Specifically, the July 23, 2024 draft engagement agreement noted that "Client has represented that Validity Finance, LLC ('Funder') has entered into an agreement ('Funding Agreement') with Client to fund attorneys' fees and expenses incurred in the Lawsuit. Client agrees to remain in good standing with Funder and comply with Client's obligations under the Funding Agreement, so as not to risk or endanger Funder's commitment to funding the Lawsuit."

29. The July 23, 2024 draft engagement agreement indicated that LWS would be responsible for all "Expenses" incurred in the LWS matter and provided a definition for "Expenses." The agreement further provided that "Client agrees that its failure to pay Expenses timely is cause for FITCH EVEN to terminate this representation."

30. With respect to Fitch Even's legal fees, the July 23, 2024 draft engagement agreement noted that "Fitch Even attorney and paralegal services will be based on an hourly basis" and that "[c]lient agrees to pay for FITCH EVEN attorney and paralegal services based on our regular litigation rates minus a 50% discount for such rates."

31. In consideration for this fee discount, Fitch Even would be entitled to a contingent fee: "In addition to the hourly rate fees of Section 6, Client agrees to pay FITCH EVEN a portion of Litigation Proceeds (net any amounts paid by Client to Funder under the Funding Agreement) received as part of any settlement or judgment in the Lawsuit based on the following schedule:

6

| **Return:** | Received within 0-6 months | Received within 6 – 12 months | Received within 12-24 months | Received within 24-36 months | Received after 36 months |
|---|---|---|---|---|---|
| *Funder* | *Greater of* 1.5x Deployed Funds *and* 15% of Litigation Proceeds | *Greater of* 2.0x Deployed Funds *and* 18% of Litigation Proceeds | *Greater of* 3.0x Deployed Funds *and* 20% of Litigation Proceeds | *Greater of* 3.5x Deployed Funds *and* 22.5% of Litigation Proceeds | *Greater of* 4.0x Deployed Funds *and* 25% of Litigation Proceeds |
| *Counsel** | 15% | 15% | 15% | 17.5% | 20% |
| *Client* | 70% | 67% | 65% | 60% | 55% |

32. The July 23, 2024 draft engagement agreement defined "Litigation Proceeds" as "any royalties, license fees, revenues, money or other valuable consideration equal in amount to the gross recovery, including the full fair market value of all relief and/or consideration actually received by Client under any license agreement or settlement agreement or under any compromise or judgment, including, but not limited to, compensatory damages, exemplary or enhanced damages, attorney's fees, pre-judgment interest, costs and post-judgment interest, from any party to the Lawsuit. In the event there is any conflict or inconsistency between the definition of 'Litigation Proceeds' in this Agreement and the Funding Agreement, the definition in the Funding Agreement will control. Litigation Proceeds shall be determined without taking into consideration and prior to deduction of (a) any legal fees and/or Litigation Costs incurred in connection with the Lawsuit, (b) setoffs of any kind, including setoffs in respect of any counterclaim asserted against Client, (c) any income or other taxes payable by Client with respect to such Litigation Proceeds, (d) any additional costs or (e) any imposed costs."

33. LWS did not agree to or execute this hybrid-fee version of the proposed engagement agreement. Instead, LWS expressly requested and agreed to a full-fee engagement.

34. Following a discussion between Fitch Even and LWS regarding the proposed engagement agreement, on August 30, 2024, Fitch Even sent a new draft engagement agreement to LWS that was based solely on hourly fees. The email accompanying the new draft stated "Attached is a revised draft engagement agreement based solely on hourly fees. If this is acceptable, let me know and I'll have my MP [Managing Partner] execute it. As we discussed, we can revert back to a hybrid version once we've decided how you want to proceed."

35. The new proposed full-fee engagement agreement specified that LWS "agrees to pay for FITCH EVEN attorney and paralegal services based on our regular litigation rates."

36. The new proposed full-fee engagement agreement noted that "[LWS] shall only pay any FITCH EVEN hourly fees owed pursuant to Section 6 from funds provided to Client by Funder financing under the Funding Agreement."

37. The new proposed full-fee engagement agreement included the same language from the July 23, 2024 draft identifying Validity Finance as the litigation funder, namely that "Client has represented that Validity Finance, LLC ('Funder') has entered into an agreement ('Funding Agreement') with Client to fund attorneys' fees and expenses incurred in the Lawsuit. Client agrees to remain in good standing with Funder and comply with Client's obligations under the Funding Agreement, so as not to risk or endanger Funder's commitment to funding the Lawsuit."

38. The new proposed full-fee engagement agreement also included the same language from the July 23, 2024 draft regarding LWS's responsibility for payment of all expenses.

39. The new proposed full-fee engagement agreement also included the same language from the July 23, 2024 draft regarding termination, namely that "Client agrees that its failure to pay Expenses timely is cause for FITCH EVEN to terminate this representation."

40. On September 9, 2024, LWS sent an executed copy of the revised full-fee engagement agreement to Fitch Even ("Engagement Agreement"). Fitch Even returned a fully executed copy of the Engagement Agreement the same day.

41. Between the time that Fitch Even submitted the proposed hybrid fee agreement and the execution of the Engagement Agreement, LWS had informed Fitch Even that Validity was required to approve the hybrid agreement. On information and belief, LWS requested but did not receive Validity's approval of the hybrid agreement, leading to the execution of the Engagement Agreement.

42. On September 13, 2024, the court in the Northern District of California scheduled a case management conference for October 10, 2024 and required the parties to submit a case management statement by October 3, 2024. Fitch Even negotiated a proposed case management statement and case schedule with defense counsel, jointly prepared and served the joint case management statement, and attended the conference.

43. Prior to LWS's engagement of Fitch Even, defendants in the Northern District of California case had petitioned the U.S. Patent Trial and Appeal Board ("PTAB") to open multiple *inter partes* reviews ("IPRs")of the validity of the (then) four patents-in-suit. The PTAB ultimately denied seven requests by defendants to institute IPRs.

44. Defendants in the Northern District of California case also requested the U.S. Patent and Trademark Office ("USPTO") to institute *ex parte* reexamination of the validity of the patents-in-suit. In response to these requests, the USPTO opened *ex parte* reexaminations of the patents-in-suit, resulting in extensive prosecution (thousands of pages of new prosecution). Ultimately, the USPTO would confirm the patentability of some original claims, reject others and allow the issuance of over 100 new claims. The resolution of these reexaminations prompted the court in the

Northern District of California case to schedule the October 10, 2024 Case Management Conference.

46. During its representation of LWS, Fitch Even reviewed the extensive file histories related to the decisions of the PTAB and USPTO, analyzed the over 100 original, amended and new claims of the patents-in-suit, negotiated a case management statement and schedule with defendants' counsel, engaged experts, obtained and analyzed reverse engineering on defendants' semiconductor products, conducted extensive infringement analysis, drafted an amended complaint, and drafted and served over 2000 pages of new infringement contentions. The client also specifically instructed Fitch Even to research the possibility of transferring the case from the Northern District of California back to Texas to address concerns that the funder had raised.

46. On October 17, 2024, Fitch Even submitted its first invoice to LWS.

47. On November 2, 2024, Validity requested Fitch Even's research regarding the transfer issue.

48. On November 11, 2024, at the request of LWS, Fitch Even re-sent to LWS the draft hybrid engagement agreement.

49. Following the submission of the October 17, 2024 invoice, Fitch Even reminded LWS about the hybrid engagement proposal and informed LWS that once LWS executed the hybrid agreement, Fitch Even would recast the invoice in accordance with the terms of the hybrid agreement.

50. LWS did not execute the hybrid fee agreement after receiving the first invoice (or at any time).

51. On November 19, 2024, Fitch Even filed a motion for leave to file an amended complaint on behalf of LWS.

52. On November 20, 2024, Fitch Even noticed that it no longer had access to an electronic document database hosted by a vendor that had been engaged by Carter Arnett. Fitch Even learned that the vendor cut off access to the database because LWS had not paid the vendor's invoices.

53. On November 26, 2024, Fitch Even followed up with LWS regarding submission of the October 17, 2024 invoice to the funder for payment. Fitch Even also inquired as to whether LWS had any thoughts on the hybrid engagement agreement.

54. On November 27, 2024, Fitch Even sent out its second invoice.

55. On December 2, 2024, Fitch Even again inquired about its outstanding invoice.

56. In December 2024, Mr. Pitcock informed Mr. Raskin that LWS and Validity had been considering the need to retain new counsel for the LWS matter who could take the case on full contingency. Mr. Pitcock explained that Validity was interested in shifting the funds earmarked for the LWS matter to another matter that was scheduled for trial in the summer of 2025.

57. In December 2024, Mr. Raskin met with Mr. Sutton. Among the topics discussed were the LWS matter and Fitch Even's outstanding invoices. Mr. Raskin reminded Mr. Sutton that Fitch Even had proposed a hybrid fee agreement, but LWS said Validity never approved it. Mr. Sutton claimed he did not remember seeing such an agreement and would consult with his team.

58. On January 8, 2025, Fitch Even sent out its third invoice to LWS.

59. On January 17, 2025, Fitch Even sent out its fourth invoice to LWS. Fitch Even also followed up about its October 17, 2024 and November 27, 2024 invoices. LWS informed Fitch Even that "Ralph [Sutton] is in California but we just spoke. We are going to try and wrap things up as soon as we can, but there are a number of factors that they need to consider. We are speaking again next Tuesday."

60. In late January, Fitch Even had a call with both LWS and Validity to discuss the outstanding invoices. On February 3, Fitch Even followed up asking about an update. Mr. Sutton responded by stating: "Mark, we will put our minds together and come back to you in the next day or two. Thanks for your patience. I understand the pressure."

61. On February 6, 2025, Fitch Even spoke with Validity about the outstanding invoices, which at the time of the discussion totaled approximately $950,000. Despite the work performed by Fitch Even, Validity offered to settle the outstanding invoices for $150,000 and 2.5% of the case proceeds (in the event of success). Validity indicated it preferred to spend some of the funds it had earmarked for LWS on another matter that could provide a quicker return on its investment than LWS.

62. On September 9, 2025, Fitch Even received an email from Mr. Mordechai Margalit purportedly on behalf of LWS, demanding that Fitch Even transfer its files to new counsel. Mr. Margalit promised to pay the outstanding expenses ($41,000) owed to Fitch Even if Fitch Even released its retaining lien and electronically transferred its files to new counsel. Mr. Margalit acknowledged the ongoing dispute over attorneys' fees but made no offer to pay any of the disputed fees, claiming instead that the fee dispute was not a reason for Fitch Even to assert a retaining lien.

63. Mr. Margalit's offer of only $41,000 for expenses, release of Fitch Even's valid lien, and apparent disinterest in resolving the fee dispute raised urgent concerns for Fitch Even regarding the dissipation of any remaining funds available from the litigation funding agreement.

64. Fitch Even submitted its final invoice to LWS on September 19, 2025. Fitch Even today has no attorney-client relationship with LWS.

65. The amount billed to LED Wafer to date, and remaining outstanding, totals $1,216,114.29.

## COUNT I – BREACH OF CONTRACT BY LWS

66. Fitch Even incorporates the foregoing paragraphs in their entirety as paragraph 65 of this Count I.

67. LWS and Fitch Even entered into the Engagement Agreement, a valid and enforceable contract for the provision of legal services related to matter captioned *LED Wafer Solutions LLC v. Samsung Electronics Co., Ltd. et al.*, Case No. 3:22-CV-04809-AMO, pending in the Northern District of California.

68. LWS has materially breached its obligations under the Engagement Agreement.

69. Under the terms of the contract, LWS "agree[d] to pay for FITCH EVEN attorney and paralegal services based on our regular litigation rates."

70. LWS was required by the terms of the contract to pay Fitch Even for the work performed by its attorneys and staff at the hourly rates specified in the contract, as described in the invoices submitted by Fitch Even for payment.

71. Since its engagement by LWS in September 2024, Fitch Even has submitted several invoices totaling $1,201,709.29 in attorneys' fees and expenses.

72. LWS has not paid any of Fitch Even's invoices.

73. Fitch Even has fully performed all of its obligations under the Engagement Agreement.

74. As a direct and proximate cause of LWS's willful breach of the Engagement Agreement, Fitch Even has suffered damages in an amount to be determined at trial which exceeds $1,200,000 (before interest).

## COUNT II –- FRAUD BY LWS AND MR. SUTTON

75. Fitch Even incorporates the foregoing paragraphs in their entirety.

76. On February 2, 2022, Mr. Sutton introduced LWS to Mr. Raskin and represented that Validity was funding several matters for Mr. Pitcock, including the LWS matter.

77. During Mr. Raskin's tenure with KWM LLP, LWS, through Mr. Pitcock, represented that Validity was providing litigation funding for the LWS matter and would cover all expenses as well as a portion of legal fees.

78. Prior to its engagement by LWS, Fitch Even provided LWS with an estimated budget for the LWS matter. Based on Mr. Raskin's discussions with Mr. Pitcock at LWS, Fitch Even expected that this budget would be shared with Validity. Neither LWS (Mr. Pitcock) nor Validity (Mr. Sutton) indicated to Fitch Even that Validity did not have sufficient funds to fulfill Fitch Even's estimated budget.

79. Both LWS (Mr. Pitcock) and Mr. Sutton were under a duty to inform Fitch Even whether the funding arrangement and available dollars had changed from when LWS and Mr. Sutton first made representations to Mr. Raskin that Validity was funding the LWS litigation and would pay all attorneys' fees up to the reimbursement percentage.

80. Fitch Even offered to represent LWS on a full-fee basis and indicated its hourly fees in its proposed engagement agreement.

81. In the September 9, 2024, engagement agreement between Fitch Even and LWS, LWS, through Mr. Pitcock, represented that Validity was providing funding for the LWS matter and had sufficient funds to cover the fees and costs enumerated in the budget presented by Fitch Even to LWS.

82. Upon execution of the engagement agreement on September 9, 2024, neither LWS (Mr. Pitcock) nor Mr. Sutton informed Fitch Even of the amount of funds available for use in the

14

LWS matter or that the remaining funds were not sufficient to fulfill the budget proposed by Fitch Even prior to its engagement by LWS.

83. Had LWS or Mr. Sutton informed Fitch Even that they did not have sufficient funds to fulfill the budget proposed by Fitch Even, Fitch Even would not have agreed to represent LWS in the LWS matter. As such Fitch Even relied upon prior affirmative representations regarding funding as well as the then current silence concerning any lack of funding.

84. On information and belief, the litigation funding agreement between Validity and LWS limited the use of the funds provided under the funding agreement to enforcement by LWS of certain enumerated patents against certain defendants; both patents and defendants were identified in the litigation funding agreement. On information and belief and based on a course of dealing with Validity as well as standard industry practice, the funds disbursed under the litigation funding agreement could not be used to cover legal fees and expenses for a different entity involved in a different litigation.

85. LWS (Mr. Pitcock) and Mr. Sutton represented to Fitch Even in December 2024 that they were considering repurposing funds allocated for the LWS case to at least one other litigation matter also being funded by Validity for Mr. Pitcock.

86. On information and belief, following the execution of the engagement agreement between LWS and Fitch Even, and without notifying Fitch Even, Validity and LWS repurposed litigation funds allocated and specified for the LWS case of *LED Wafer Solutions LLC v. Samsung Electronics Co., Ltd. et al.*, Case No. 3:22-CV-04809-AMO (N.D. Cal.) under the LWS/Validity funding agreement away from the LWS case to an unrelated litigation matter also financed by Validity.

15

87. The actions of Validity and LWS in this regard caused a fraudulent depletion of the funds available to pay Fitch Even's invoices and indicate a deliberate intent to ignore their commitments to pay Fitch Even's invoices and represents another failure to disclose information they were under a duty to disclose based on their prior affirmative representations about funding..

88. These acts and omissions by Mr. Sutton and LWS violated the litigation funding agreement on which Fitch Even relied when Fitch Even agreed to represent LWS in exchange for the timely payment of its attorneys' fees and expenses in representing LWS, and they wrongfully reduced the funds available to litigate the LWS matter, which was a significant factor in Validity's inability and/or refusal to pay Fitch Even.

89. As a direct and proximate cause of LWS's and Mr. Sutton's fraudulent actions, omissions and misrepresentations, Fitch Even has suffered damages in an amount to be determined at trial which, upon information and belief, exceeds $1,200,000 (before interest).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Fitch, Even, Tabin & Flannery LLP ("Fitch Even"), prays for Judgment in its favor and against Defendants LED Wafer Solutions LLC ("LWS") and Ralph Sutton (Mr. Sutton"), as follows:

a) Judgment in favor of Fitch Even and against Defendant LWS for all damages proximately caused by Defendant's wrongful breach of contract, an amount to be determined at trial, but no less than the sum of $1,216,114.29;

b) Judgment in favor of Fitch Even for all damages sustained as a result of the fraud committed by LWS and Mr. Sutton in an amount to be proven at trial, but no less than the sum of $1,216,114.29, plus other remedies including attorneys' fees;

c) Equitable relief enjoining LWS from using, spending, distributing, dispensing or otherwise using the funds established in the litigation funding agreement between LWS and Validity;

d) Awarding Fitch Even any other compensatory damages available at law in an amount to be determined at trial;

e) Awarding Fitch Even any other punitive damages available at law for the fraudulent conduct alleged in Count II;

f) Awarding Fitch Even attorneys' fees and costs incurred in prosecuting this action;

g) Awarding pre-judgment and post-judgment interest, and any other interest or damages as required under the terms of the Engagement Agreement; and

h) Granting Fitch Even such other and further relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Date: September 25, 2025

s/*Richard B. Polony*
Attorney for Plaintiff
Fitch, Even, Tabin & Flannery LLP

Peter D. Sullivan (6481940)
Terrence P. McAvoy (6196798)
Richard B. Polony (6227043)
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001
psullivan@hinshawlaw.com
tmcavoy@hinshawlaw.com
rpolony@hinshawlaw.com