# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FITCH, EVEN, TABIN & FLANNERY LLP,<br><br>               Plaintiff,<br>v.<br><br>LED WAFER SOLUTIONS LLC and RALPH SUTTON,<br><br>               Defendants. | Case No. 1:25-cv-11666<br><br>**Judge Mary M. Rowland**<br><br>Magistrate Judge Jeannice W. Appentang |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

**I.      INTRODUCTION**

The Plaintiff, Fitch, Even, Tabin & Flannery LLP ("Fitch Even"), is a law firm and defendant LED Wafer Solutions LLC ("LWS") is its former client. Defendant Ralph Sutton is the CEO and presumptive owner of a funding entity called Validity Finance, LLC ("Validity Finance"). Validity Finance is a litigation funder who contracted, via a wholly-owned subsidiary VF Asset Holdings, LLC ("VF"), to pay Fitch Even's invoices for prosecuting an LWS lawsuit. LWS also agreed to pay Fitch Even's invoices. But, to date, LWS, Validity Finance and VF have reneged and failed to pay anything to Fitch Even.

Validity Finance is a large funding organization, and VF is a special-purpose entity formed by Validity Finance to fund LWS's lawsuits. VF has no assets other than a limited pool of funds provided by its parent organization, Validity Finance. VF and LWS are parties to a litigation funding agreement, and Fitch Even is a third-party beneficiary of this litigation funding agreement. Mr. Sutton exercises complete control over Validity Finance and VF.

LWS and Mr. Sutton have now taken steps to divert and deplete the limited pool of funds that VF had set aside for payment of Fitch Even's invoices. Recently, Validity and LWS surprised Fitch Even by hiring another law firm to file a different, replacement lawsuit asserting the same patents, involving the same accused products, and against the same parties that LWS had previously sued. Through this new lawsuit, Defendants are improperly diverting the limited pool of funds contractually set aside for Fitch Even's benefit in a transparent attempt to evade Defendants' obligations to Fitch Even. Absent an immediate restraining order by the Court, Defendants will succeed in diverting these funds, thereby completely escaping their obligations to pay Fitch Even's invoices. Although only money damages are at issue, under Seventh Circuit law, injunctive relief is warranted here because Fitch Even otherwise would be left with no adequate remedy at law. Left unchecked, Defendants' diversion of funds will leave nothing but insolvent shell companies remaining.

This matter requires urgent relief from the Court. Fitch Even thus moves for a temporary restraining order **precluding Defendant LWS from making any payment or transferring any funds or assets** to any third party. Fitch Even further moves for a temporary restraining order **precluding Mr. Sutton from making or directing any payment or transfer of funds or assets from VF**. Fitch Even also moves for a temporary restraining order compelling Mr. Sutton to actively prevent transfer, payment or other exhaustion of funds or assets that would impede or impair Validity's ability to pay Fitch Even's invoices. Fitch Even asks that this temporary restraining order remain in place for at least fourteen days and until the Court holds a hearing on a preliminary injunction.

## II. STATEMENT OF FACTS

Fitch Even is a Chicago-based law firm. Defendant LWS is a Delaware entity founded by Mr. Jeremy Pitcock to acquire and assert the rights corresponding to a set of patents. LWS has no

revenue source other than what it can generate from monetizing its patent assets. *See* Declaration of Mark S. Raskin ("Raskin Decl.") at ¶ 5. Mr. Ralph Sutton is the Chief Executive Officer of Validity Finance, which owns and controls VF. *Id*. at ¶¶ 3, 7.

In 2021, LWS sued two Samsung entities for patent infringement in the Western District of Texas (*LED Wafer Solutions LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 6:21-cv-00292-ADA (W.D. Tex. Mar. 25, 2021)). In 2022, the case was transferred to the Northern District of California and assigned Case No. 3:22-cv-04809-AMO (N.D. Cal. Aug. 22, 2022).

Mr. Sutton then contacted Mark Raskin, then a partner of King & Wood Mallesons LLP ("KWM LLP"), about working with LWS, and introduced Mr. Raskin to Mr. Pitcock. *Id.* at ¶¶ 3-4, Ex. 1. Mr. Sutton represented that Validity was funding various LWS lawsuits. *Id.* He explained that a litigation funding agreement between Validity and LWS allocated a set amount of funds to VF to prosecute the Samsung litigation. *Id.* at ¶ 6. He further explained that the funds provided under this litigation funding agreement could not be used for any other purpose. *Id*. at ¶ 6; *see also id*. at ¶ 8, Ex. 2 (believed to be the as-executed version of the agreement signed by the parties).

In February 2022, Mr. Pitcock decided to retain Mr. Raskin and KWM LLP as co-counsel with another firm on the *LWS v. Samsung* case ("LWS Matter"). *Id.* at ¶ 9-11, Exs. 3-4. Mr. Raskin asked Mr. Pitcock whether he had to confer with Mr. Sutton regarding the LWS engagement agreement, and Mr. Pitcock replied "Strange coincidence -- I just spoke to Ralph . . . . He knows and approves of LED Wafer -- he was the one who recommended you." *Id.* at ¶ 15, Ex. 8. On March 9, 2022, Mr. Raskin was sent a proposed engagement agreement for the LWS Matter that stated Validity was providing litigation funding for *LWS v. Samsung*: "[Counsel] will be paid as follows according to the mutually acceptable funding agreement between Client and Validity Finance. . . ." *Id.* at ¶¶ 16-17, Exs. 9-10. Mr. Pitcock informed Mr. Raskin that "Brad, myself and

the funder all have approved of your engagement on the LWS matter." *Id.* at ¶ 18, Ex. 11. The parties executed that co-counsel agreement. *Id*. at ¶ 20, Ex. 13.

In late June 2024, Mr. Raskin joined Fitch Even and soon thereafter notified LWS and Mr. Sutton of the move. *Id.* at ¶ 20. Fitch Even forwarded various fee proposals to LWS, including a budget based on undiscounted hourly rates and a budget for an alternative hybrid fee structure. *Id.* at ¶¶ 21-22, Exs. 13-14. Ultimately, LWS agreed "to pay for FITCH EVEN attorney and paralegal services based on our regular litigation rates." *Id.* at ¶ 28, Ex. 21 at § 6.2. The agreement specified that "[LWS] shall only pay any FITCH EVEN hourly fees owed pursuant to Section 6 from funds provided to [LWS] by Funder financing under the Funding Agreement." *Id.* at § 6.3. LWS further represented that "Validity Finance, LLC ('Funder') has entered into an agreement ('Funding Agreement') with [LWS] to fund attorneys' fees and expenses incurred in the [Samsung cases]. [LWS] agrees to remain in good standing with Funder and comply with [LWS's] obligations under the Funding Agreement, so as not to risk or endanger Funder's commitment to funding the Lawsuit." *Id*. at § 2.5. LWS further agreed that "its failure to pay Expenses timely is cause for FITCH EVEN to terminate this representation." *Id*. at § 5.2. Fitch Even and LWS executed the Agreement on September 9, 2024. *Id.* at ¶¶ 27-28, Exs. 19-20.

Over the next four months, LWS instructed Fitch Even to perform an immense amount of work on the LWS Matter. Fitch Even attorneys reviewed the extensive file histories of the patents (including *inter partes* review and *ex parte* reexamination materials), analyzed over one hundred (100) patent claims for prior art and infringement purposes, and negotiated a case management statement and schedule with opposing counsel. *Id.* at ¶¶ 30-33. Significantly, Fitch Even attorneys hired third-party experts—at significant out-of-pocket expense to the firm—to obtain and perform reverse-engineering on semiconductor products of the Samsung defendants. Fitch Even also

4

conducted an extensive infringement analysis, drafted an amended complaint, and drafted and served over two thousand (2,000) pages of new infringement contentions. *Id.* at ¶ 33. LWS also instructed Fitch Even to research the possibility of transferring the case back to Texas (*id.*), and, in fact, Validity itself requested Fitch Even's research regarding the transfer issue. *Id*. at ¶ 35.

On October 17, 2024, Fitch Even submitted its first invoice to LWS. *Id*. at ¶ 34. Following submission of this invoice, Fitch Even offered to renegotiate the billing arrangement to a hybrid structure, but LWS declined. *Id.* at ¶ 34-38.

During November and December 2024, Fitch Even followed up with LWS regarding submission of its September invoice to VF for payment, submitted a second invoice, and inquired as to whether LWS had any thoughts on the hybrid structure. *Id*. at ¶¶ 39-43. In December 2024, Mr. Pitcock informed Mr. Raskin that LWS and Validity Finance might retain new counsel who could take the case on full contingency. *Id.* at ¶ 44. Mr. Pitcock explained that Validity Finance had limited funds available for the cases it was funding for him, including the LWS Matter, and wanted to reallocate the funds earmarked for the Samsung litigation to another of Mr. Pitcock's matters that was scheduled for trial in the summer of 2025. *Id*.

In December 2024, Mr. Raskin met with Mr. Sutton. *Id.* at ¶ 45. Among the topics discussed were the LWS Matter and Fitch Even's outstanding invoices. *Id.* Mr. Raskin reminded Mr. Sutton that Fitch Even had first proposed a hybrid fee agreement before offering LWS the full-fee Engagement Agreement, but LWS told Fitch Even that Validity never approved it. *Id.* Mr. Sutton claimed he did not remember seeing such an agreement and would consult with his team. *Id.* In January, Fitch Even sent out its third and fourth invoices to LWS and continued to seek updates on payment of its overdue invoices. *Id.* at ¶ 46-49. Mr. Sutton responded, saying, "Mark, we will put our minds together and come back to you in the next day or two. Thanks for your patience. I

5

understand the pressure." *Id*. at ¶ 49, Ex. 23. On February 6, 2025, Fitch Even spoke again with Validity about the outstanding invoices, which at the time of the discussion approximated $950,000. *Id*. at ¶ 50. Despite the substantial work performed by Fitch Even, Validity offered to settle the outstanding invoices for $150,000 and 2.5% of the case proceeds (in the event of success). *Id*. Validity stated that it preferred to spend the LWS funds on another matter that could provide a quicker return on its investment than LWS. *Id*.

To date, LWS and Validity have failed to pay any of Fitch Even's invoices. *Id.* at ¶ 54. Fitch Even sent its final invoice to LWS earlier this month. *Id.*

Mr. Pitcock apparently recently transferred his interest in LWS to an individual named Mr. Moti Margalit, who was previously unknown to Fitch Even. *Id.* at ¶ 53. On September 9, 2025, Fitch Even received an email from Mr. Margalit demanding that Fitch Even transfer its files to new counsel, Boies Schiller & Flexner. *Id.* at ¶ 51, Ex. 24. Fitch Even refused, citing its common-law attorney retaining lien. *Id*. at ¶ 52, Ex. 25.

Troublingly, Mr. Margalit offered to pay only $41,000 of the outstanding invoice balance—and then only after Fitch Even transferred its files to new counsel. *Id.* at ¶ 51, Ex. 24. He acknowledged the dispute over attorneys' fees, but made no offer to pay any of these fees. *Id*.

Mr. Margalit's offer of only $41,000 for release and dismissal of Fitch Even's valid lien, and apparent disinterest in resolving the fee dispute, raised urgent concerns for Fitch Even regarding the dissipation of any remaining funds available from the litigation funding agreement. Fitch Even also learned from a third-party vendor that was hosting relevant documents in the LWS litigation that LWS failed to timely pay this entity as well. *Id*. at ¶ 40.

On September 15, 2025, LWS filed a new complaint in the United States District Court for the Eastern District of Texas, Marshall Division (captioned *LED Wafer Solutions, LLC v. Samsung*

*Electronics Co., Ltd., et al.*, Case No. 2:25-cv-00948 (E.D. Tex. Sept. 15, 2025)). Given that VF has a limited pool of funds to pay its law firms, it is easy to see that this replacement lawsuit is an effort by LWS and Validity to evade their obligations to Fitch Even. Absent relief from this Court, the Boies Schiller law firm will soon exhaust any available funding at VF to prosecute this new lawsuit. Defendants expect that this maneuver will leave Fitch Even with no recourse against VF and with only an inchoate, unrealized claim against LWS.

### III. ARGUMENT

"The standard for issuing a temporary restraining order is identical to that governing the issuance of a preliminary injunction." *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020), *aff'd*, 974 F.3d 810 (7th Cir. 2020). A temporary restraining order is warranted where the moving party establishes that (1) it "is likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [the movant's] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Chi. Women in Trades v. Trump*, 773 F. Supp. 3d 592, 603-04 (N.D. Ill. 2025).

"The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). The likelihood of success is "often decisive." *Braam v. Carr*, 37 F.4th 1269, 1272 (7th Cir. 2022).

Here, all factors are satisfied and weigh heavily in Fitch Even's favor.

#### A. Plaintiff Fitch Even is Likely to Win on the Merits

Fitch Even's Complaint in this matter (Dkt. 1) alleges breach of contract and fraud. Fitch Even is highly likely to prevail on both grounds.

To succeed on its breach of contract claim, Fitch Even "must show (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). It is beyond dispute that Fitch Even and Defendant LWS entered into an engagement agreement for Fitch Even to provide legal services in return for payment of Fitch Even's fees and expenses. Raskin Decl. at ¶ 28, Ex. 20 at § 6.2. It is also beyond dispute that Validity, in turn, agreed in a written funding agreement with LWS that Validity would pay Fitch Even directly for the services rendered under the engagement agreement. *Id.* at ¶ 6. Fitch Even is a directly-intended third-party beneficiary of that funding agreement. VF was capitalized with specific and limited funds for the LWS Matter, specifically to pay for legal services and expenses in the Samsung cases. *Id.* The funds provided under the funding agreement between Validity and LWS could not be used for any other purpose. *Id.* Mr. Sutton confirmed to Mr. Raskin on February 2, 2022 that Validity was providing funding for this matter. *Id.* at ¶ 3. It was Mr. Sutton who introduced Mr. Raskin to Mr. Pitcock of LWS. *Id*. at ¶¶ 3, 14, Ex. 7.

The Engagement Agreement recites:

- "[LWS] has represented that Validity Finance, LLC ('Funder') has entered into an agreement ('Funding Agreement') with [LWS] to fund attorneys' fees and expenses incurred in the Lawsuit. [LWS] agrees to remain in good standing with Funder and comply with [LWS's] obligations under the Funding Agreement, so as not to risk or endanger Funder's commitment to funding the Lawsuit." (*Id*. at ¶ 28, Ex. 20 at § 2.5).

- "[LWS] shall be responsible for Expenses. FITCH EVEN may advance funds for payment of Expenses on [LWS's] behalf or may ask [LWS] to pay the Expenses directly to a vendor. [LWS] agrees to reimburse FITCH EVEN for payments of Expenses on its behalf." (*Id*. at § 5.2).

- "[LWS] agrees to pay for FITCH EVEN attorney and paralegal services based on our regular litigation rates. The following are representative of our current hourly rates: Partners -- $425-1300/hour… Associates -- $275–400/hour… Paralegals, Law Clerks, and Technical Specialists -- $190-375/hour" (*Id*. at § 6.2). "[LWS] shall only pay any FITCH EVEN hourly fees owed pursuant to Section 6 from funds provided to [LWS] by Funder financing under the Funding Agreement." (*Id*. at § 6.3).

8

It is further beyond dispute that Fitch Even fulfilled its end of the bargain, but the Defendants did not. Defendants failed to pay a single Fitch Even invoice. Between October 2024 and January 2025, Fitch Even submitted several invoices to LWS, amounting to over $1.2 million in fees and expenses. *Id*. at ¶¶ 34, 42, 45, 53.

Despite all the legal services rendered by Fitch Even, Defendants have paid Fitch Even nothing. There is no possible justification for this conduct. Fitch Even is highly likely to win its breach of contract counts (namely Counts I and II set forth in its Complaint filed on September 25, 2025). *See Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) ("a plaintiff must demonstrate that 'its claim has some likelihood of success on the merits,'… not merely a 'better than negligible' chance.").

In addition, Fitch Even is highly likely to win its fraud claim. A fraud claim requires a showing that (i) Defendants made a false statement of material fact; (ii) Defendants made the statement with the knowledge that it was false; (iii) Defendants intended the statement to induce Fitch Even to act; (iv) Fitch Even reasonably and justifiably relied on the false statement; and (v) Fitch Even suffered damages due to reliance on the false statement. *See Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286 (1980); *Abazari v. Rosalind Franklin Univ. of Med. & Sci.,* 2015 IL App (2d) 140952, ¶ 14 (noting intentional misrepresentation is fraud).

There is no question that Defendants made false statements to Fitch Even while knowing those statements were false. Defendants represented to Fitch Even that the Samsung litigation was funded, *i.e.*, that Validity Finance had provided specific funding for this matter, that Fitch Even would be paid from that fund, and that Fitch Even would be paid for its legal services and any expenses it incurred in connection thereto. *See* Raskin Decl. at ¶¶ 3, 6, 8, 11-12, 14-17, 19, 28, Exs. 4-5, 7-10, 12, 20.

Defendants intended those false statements to lure Fitch Even into providing legal services to LWS such that LWS's pending patent litigation continued—to the benefit of all Defendants. Defendants, however, never informed Fitch Even that they did not actually have the funds required to pay Fitch Even for its work on the matter. Further, Defendants concealed the fact that even the limited funding available to LWS for its case against Samsung was going to be diverted to a different matter that was also funded by Validity. *Id.* at ¶¶ 44, 49. Specifically, in December 2024, Mr. Pitcock informed Mr. Raskin that LWS and Validity had been considering the need to retain new counsel for the Samsung litigation who could take the case on full contingency. *Id*. at ¶ 44. In addition, Mr. Pitcock explained that Validity was interested in shifting the funds devoted to the LWS Matter to another Validity-funded matter that was scheduled for trial in the summer of 2025. *Id.* Validity had suffered repeated legal losses in this other litigation and improperly intended to redirect the funds procured for the Samsung litigation in one last desperate attempt to salvage its losses in the other matter. *Id.*

Fitch Even relied on Defendants' material misrepresentations, believing Defendants had properly funded the LWS Matter, that Defendants would comply with their contractual representations and obligations, and that Defendants would pay Fitch Even for its performance and out-of-pocket advancement of expenses. Fitch Even has suffered damages due to this fraud.

### B. Absent a TRO, Fitch Even Will Suffer Irreparable Harm

A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (2008). Harm is irreparable when "legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate 'does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Id.* A mere possibility of irreparable harm will not suffice. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

The Seventh Circuit recognizes that even where only monetary damages are at issue, irreparable harm exists where a defendant is at risk of "becom[ing] insolvent before a final judgment." *Roland Mach. Co. v. Dresser Indus., Inc*. 749 F.2d. 380, 386 (7th Cir. 1984); *see also United States v. Olson*, 98 F.4th 840, 842 (7th Cir. 2024) (district court erred by concluding IRS "c[ould] get future money judgments against the [defendants] if they persist in not paying taxes" because defendants "have not paid in the past and assert inability to pay in the future."); *Andrews v. Holloway*, No. 95-1047 (JBS), 1995 U.S. Dist. LEXIS 22121 at *32 (D.N.J. November 9, 1995) ("[The] court finds a substantial and real risk, based upon defendants' past financial manipulations, that funds would be unavailable to satisfy a reasonably foreseeable judgment in [plaintiff's] favor unless this preliminary injunctive relief is granted."); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc*., 222 F.3d 132, 138 (3d Cir. 2000) ("dissipation of PACA trust assets can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability to ultimately make payment. . . .").

This rule squarely applies here. Despite Defendants' representation that they had appropriately funded the Samsung litigation, Defendants chose to divert these funds to different matters and to another law firm. Defendants intend to deplete those resources while ignoring their contractual obligations to Fitch Even. Defendants have not paid Fitch Even for its services and do not intend to pay Fitch Even for its services. Defendants secretly diverted VF resources allocated for paying legal fees in the Samsung litigation to a different matter they believed might provide a quicker return on their investment, further exhausting LWS's funding and violating their contractual and fiduciary obligations to Fitch Even. Raskin Decl. at ¶¶ 44, 49. Unless prohibited by this Court, Defendants will deplete the limited VF resources, leaving Fitch Even without recourse.

It is particularly troubling that Defendants' offers to settle this matter have decreased substantially, indicating a near depletion of their Validity funding and an increasing recalcitrance to pay Fitch Even. Again, Fitch Even was first offered $150,000 and 2.5% of the case proceeds (in the event of success), then only $41,000, then a flat refusal to pay anything. LWS's offer of $41,000, seeming disinterest in resolving the fee dispute, and the apparent continued diversion and depletion of the LWS fund to another firm, all underscore the need for immediate redress.

LWS and Validity may point out that Fitch Even has notified the defendants in the underling patent lawsuits of an attorney charging lien on any judgments in those lawsuits. But the charging lien is inchoate and highly speculative at this point and may never lead to a recovery for Fitch Even.

**C.     The Balance of Equities and Public Interest Weigh in Plaintiff's Favor**

Granting the TRO would cause no harm to Defendants. Defendants are sophisticated parties who are unquestionably in breach of agreements they entered into with the intent to defraud Fitch Even. Defendants fraudulently diverted funds targeted for the underlying LWS Matter to an unrelated matter, while concealing these facts from Fitch Even. Defendants wish to continue spending the limited and unrenewable resources remaining in their fund, leaving Fitch Even with no recourse and no payment for services rendered. Further, Defendants recently filed a new case in a new venue, presumably without securing new funding, that will deplete the remaining funds even faster. VF and LWS have no employees or operations, and no known expenses other than legal fees payable to Boies Schiller presumably in the same manner that legal fees are owed to Fitch Even. An order briefly freezing these payments will have no impact on these entities. While Validity Finance is an operating entity with employees and normal business expenses, Fitch Even does not seek to enjoin this entity from any conduct except as would interfere with the temporary restraint against VF and LWS.

On the other hand, Fitch Even will be seriously harmed absent an injunction. Defendants are refusing to pay Fitch Even and will deplete VF's limited pool of funds if their conduct is left unchecked. Simply put, the equities weigh heavily in favor of Fitch Even. In addition, the harm of denying an injunction to Fitch Even outweighs the harm to LWS and Validity in granting one. *Life Spine*, 8 F.4th at 539 (the Court must also "weigh[] the harm of denying an injunction to [plaintiff] against the harm to the defendant [in] granting one."). Further, "[i]n balancing the harms, the Court also considers the public interest… [with the] test [] done on a sliding scale: 'If [plaintiffs are] likely to win on the merits, the balance of harms need not weigh as heavily in [their] favor.'" *Id.*

There is no harm to Defendants in ordering them to allocate depleting resources that contractually had been set aside for payment to Fitch Even. There is substantial harm to Fitch Even for non-payment of over $1.2 million in fees and expenses.

Finally, the public interest favors temporary injunctive relief because there is public interest in the enforcement of valid contracts. *SMC Corp., Ltd. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 929 (N.D. Ill. 2007); *McCoy v. Gamesa Tech. Corp.*, No. 11 C 592, 2012 U.S. Dist. LEXIS 38745 at *14 (N.D. Ill. Mar. 22, 2012) ("As the underlying claim represents a commercial dispute between two private parties, the only public interest involved is in the enforcement of valid contracts. . . . We therefore focus our attention on the remaining factors."). Here the requested relief is particularly narrow and involves only the parties to this suit, and in any case, the general public will not be harmed by the Court's grant of temporary injunctive relief. The high likelihood of Fitch Even's success on the merits far outweighs on a sliding scale any perceived harm to Defendants or public interest.

## IV. BOND

Defendants and their owners are sophisticated entities, and Validity Finance has more than ample funds to continue to pay the Boies Schiller firm if Mr. Sutton were to direct it to continue the Samsung litigation. Fitch Even is requesting a restraining order for a short period until the Court can order a more detailed hearing of the matter. Accordingly, Fitch Even requests that the Court set a bond of no greater than $10,000 when granting the temporary injunctive relief sought herein.

## V. CONCLUSION

Fitch Even urges the Court to grant a temporary restraining order as outlined above.

Dated this 30th day of September 2025.

Respectfully submitted,

 /s/Richard B. Polony
Peter D. Sullivan (6481940)
Terrence P. McAvoy (6196798)
Richard B. Polony (6227043)
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
312-704-3001
psullivan@hinshawlaw.com
tmcavoy@hinshawlaw.com
rpolony@hinshawlaw.com

*Attorneys for Plaintiff Fitch, Even, Tabin & Flannery LLP*