# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FITCH, EVEN, TABIN & FLANNERY LLP, | Case No. 1:25-cv-11666 |
| *Plaintiff*, | Judge Steven C. Seeger |
| v. | Magistrate Judge Jeannice W. Appentang |
| LED WAFER SOLUTIONS LLC and RALPH SUTTON, | |
| *Defendants*. | |

## **DEFENDANT RALPH J. SUTTON'S MOTION FOR STAY PENDING ARBITRATION**

Defendant Ralph J. Sutton hereby submits this application under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, to stay this action pending arbitration. This Court should stay this action in accordance with the terms of the Investment Agreement that Plaintiff invokes as a basis for its claims. Otherwise, this Court should still stay this action pending arbitration between Plaintiff Fitch, Even, Tabin & Flannery LLP ("Fitch Even") and Defendant LED Wafer Solutions LLC ("LED Wafer") under their letter of engagement, as FAA § 3 requires.

The heart of this case is a fee dispute between Fitch Even and its former client, LED Wafer. But in an attempt to manufacture leverage in that dispute, Fitch Even has asserted not just breach of contract against LED Wafer, but also fraud against LED Wafer as well as Mr. Sutton. Mr. Sutton is Chief Executive Officer of Validity Finance, LLC, an affiliate of which (VF Asset Holdings, or "VF") provided litigation funding to LED Wafer under an Investment Agreement dated January 6, 2021. *See* Ex. 2.[1]

---

[1] Exhibit numbers refer to the exhibits attached to the Declaration of Matthew D. Reade filed concurrently with this motion, unless otherwise noted.

In support of this claim, Fitch Even asserts that it is a "third-party beneficiary" of that Investment Agreement, and has moved for a temporary restraining order against Mr. Sutton based on his alleged misuse or diversion of Validity Finance's commitments under that agreement. Dkt. 7 ("TRO Mot.") at 1. But unfortunately for Fitch Even, that maneuver means that this Court cannot hear Fitch Even's dispute with Mr. Sutton.

The Investment Agreement requires private arbitration of "any and all disputes, claims or controversies arising out of or relating to this Agreement." Ex. 2 § 15.6. And because Fitch Even expressly claims the benefits of the Investment Agreement, the law provides that it is estopped from simultaneously trying to avoid arbitration of its dispute pursuant to the same agreement. As the Seventh Circuit has long held: "To allow" Fitch Even "to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (cleaned up). Fitch Even's sole claim against Mr. Sutton is thus subject to arbitration.

So, too, are Fitch Even's claims against LED Wafer. Those claims likewise rely on the Investment Agreement. But the letter of engagement between Fitch Even and LED Wafer also provides for binding arbitration of "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Dkt. 17-20 at 6 (§ 12.1). Fitch Even's lawsuit flagrantly breaches its obligation to arbitrate its claims against LED Wafer. The issues raised by Fitch Even's claims against LED Wafer are much the same as the issues in its claim against Mr. Sutton. That creates a second basis for a stay under FAA § 3: because Fitch Even's claims against Mr. Sutton raise issues that are "referable to arbitration" between Fitch Even and LED Wafer under the terms of

their agreement, this Court "shall" stay the entire "action," including Fitch Even's claims against Mr. Sutton. 9 U.S.C. § 3.

Where FAA § 3 is triggered, the Supreme Court has held that staying the action is mandatory. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023). Therefore, this Court should grant Mr. Sutton's application to stay these proceedings—including any proceedings on Fitch Even's motion for temporary restraining order—pending arbitration.

## BACKGROUND

### I. Validity Finance, LLC

Validity Finance, LLC ("Validity Finance") is a litigation-finance firm. It funds plaintiffs and law firms with promising legal claims in exchange for a share of the recovery. Ex. 1, Decl. of R. Sutton ("Sutton Decl.") ¶ 4. Ralph J. Sutton is the CEO of Validity Finance and affiliated entities, including VF Asset Holdings and Security Vigilance LLC. *Id*. ¶ 3. Mr. Sutton has been CEO since co-founding Validity Finance in 2018. *Id*. He has worked in litigation finance for nearly two decades. *Id*. Before that, he spent nearly two decades as a trial attorney. *Id*.

Validity Finance has invested more than $400 million across more than 75 matters since its founding. *Id*. ¶ 4. Litigation funding serves a crucial social function. It allows plaintiffs with limited resources to retain high-quality counsel, which ensures that wrongdoers cannot thwart justice by waging a war of attrition against their victims. *Id*. ¶ 5. For example, when Validity Finance financed and advised a law firm helping hurricane victims pursue FEMA flood-insurance claims, those victims went on to recover, on average, over four times as much on their claims as other claimants. *Id*. ¶ 6.

### II. LED Wafer Solutions LLC

Defendant LED Wafer Solutions LLC is a Delaware limited liability company based in Waco, Texas. It owns patents on light-emitting diode ("LED") technology invented by its

3

principal, Mordehai Margalit. LEDs created with Mr. Margalit's technology produce less heat and are smaller and more efficient than conventional LEDs. With Validity Finance's financial support, LED Wafer is litigating against Samsung for stealing that technology for use in popular consumer products. *See generally* Compl., *LED Wafer Sols., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:25-cv-00948 (E.D. Tex. Sept. 15, 2025), Dkt. 1; First Am. Compl., *LED Wafer Sols., LLC v. Samsung Elecs. Co., Ltd.*, No. 3:22-cv-04809 (N.D. Cal. Dec. 16, 2022), Dkt. 172.

**III.     The Fee Dispute**

In September 2024, LED Wafer retained Fitch Even to represent it in one of its cases against Samsung. Dkt. 1 ("Compl.") ¶ 40.[2] Before being retained, Fitch Even gave LED Wafer a budget. *Id*. ¶ 78; *see also* Dkt. 17-14 (budget). The budget said that the first six months of the case would cost ▇▇▇▇▇▇ in fees and expenses. Dkt. 17-14 at 6.[3] Fitch Even promised LED Wafer that it would "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Dkt. 17-20 at 2 (§ 2.5). But instead, Fitch Even racked up almost a million dollars in bills in four months. Compl. ¶¶ 46-61 (recounting four monthly invoices totaling "approximately $950,000").

After discovering Fitch Even's overbilling, Validity Finance offered to settle the bills for far more than Fitch Even had originally pledged to spend—$150,000 plus a contingent share of any case proceeds. *Id*. ¶ 61. Fitch Even rejected that offer and continued incurring fees and expenses, which would ultimately total roughly $1.2 million. *Id*. ¶¶ 61-65.

---

[2] To the extent these background facts come from Fitch Even's complaint or motion for temporary restraining order, Mr. Sutton does not concede, and does not vouch for, their accuracy.

[3] Fitch Even omits these figures from its complaint and motion for temporary restraining order.

4

Once Fitch Even withdrew as LED Wafer's counsel, LED Wafer retained Boies Schiller Flexner LLP in its place. ████████████████████████████████████████████████████████████████████████████████████. Sutton Decl. ¶ 8. Fitch Even's improper conduct forced LED Wafer's new counsel ████████████████████████████████████████ ████████████ *Id.* Fitch Even also contacted Samsung—LED Wafer's opponent in litigation—to announce that LED Wafer had not paid its fees. *Id.*; *see also* TRO Mot. at 12 (stating that Fitch Even "notified the defendants" in LED Wafer's lawsuits).

After it became clear that those actions would not coerce LED Wafer and Validity Finance to pay its bloated fees, Fitch Even brought this action against LED Wafer and Validity Finance's CEO, Mr. Sutton. Notably, LED Wafer's engagement letter with Fitch Even has an express arbitration agreement. Yet Fitch Even filed its claims against LED Wafer—for breach of contract and fraud—in this Court. It also tacked on a fraud claim against Mr. Sutton personally, without naming Validity Finance or VF as a defendant.

Several days later, the day before the start of Yom Kippur and months after its fee dispute had ripened, Fitch Even filed a motion seeking a temporary restraining order blocking LED Wafer from paying anyone, including its new counsel. Fitch Even also asked the Court to enjoin Mr. Sutton "from making or directing any payment or transfer of funds or assets from VF." TRO Mot. at 2; *see also id.* at 12-13 (seeking also to enjoin Validity Finance as necessary to

---

4 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5

effect Fitch Even's desired injunction against Mr. Sutton and VF). At this point, Fitch Even still had not served Mr. Sutton or asked that Mr. Sutton waive service of process. Dkt. 14 at 2 & n.1.

Fitch Even's complaint and motion for emergency relief against Mr. Sutton center on the Investment Agreement between VF and LED Wafer. Fitch Even bases its request for an emergency injunction against Mr. Sutton, Validity Finance, and VF[5] on Fitch Even's claimed status as "a third-party beneficiary" of that agreement. TRO Mot. at 1. Fitch Even discusses the Investment Agreement more than a dozen times in its complaint. In stating its fraud claim against Mr. Sutton, for example, Fitch Even asserts that Validity Finance and LED Wafer "repurposed litigation funds" meant for Fitch Even for "an unrelated litigation matter," causing "a fraudulent depletion of the funds available to pay Fitch Even" and "violat[ing] the litigation funding agreement on which Fitch Even relied." Compl. ¶¶ 86-88.

Upon learning of Fitch Even's motion for temporary restraining order, Mr. Sutton promptly retained counsel for his defense. Dkt. 14 at 1. Mr. Sutton now seeks to stay this case pending arbitration under the Investment Agreement that Fitch Even invokes against him or, otherwise, pending arbitration between LED Wafer and Fitch Even per their engagement letter.

**IV.     The Relevant Arbitration Clauses**

The Investment Agreement between VF and LED Wafer requires that "any and all disputes, claims or controversies arising out of or relating to this Agreement will be submitted to JAMS . . . for final, binding and confidential arbitration in New York" under JAMS's Streamlined Arbitration Rules & Procedures. Ex. 2 § 15.6. The Investment Agreement vests the arbitrator with the sole authority "to determine if an issue is subject to this arbitration

---

[5] Although Fitch Even's motion for temporary restraining order appears, at times, to be directed only at Mr. Sutton, Fitch Even makes clear that it seeks to bind both Validity Finance and VF, which it says are under Mr. Sutton's "complete control." TRO Mot. at 1.

obligation." *Id.* § 15.6(b).  The Investment Agreement directs the participants to share the cost of the arbitration while it happens.  *Id.* § 15.6(d).  But once the arbitrator issues an award, the loser must reimburse "the prevailing party's reasonable legal fees, costs and disbursements in connection with such arbitration."  *Id.*

The letter of engagement between LED Wafer and Fitch Even also requires arbitration between those parties: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" the letter of engagement, "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Dkt. 17-20 at 6-7 (§ 12.1).  And the arbitrator's decision "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."  *Id.* (§ 12.2).

## ARGUMENT

**I.      Legal Standard**

Section 3 of the Federal Arbitration Act provides that when a lawsuit involves "any issue referable to arbitration" under a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  This provision "leaves no place for the exercise of discretion by a district court."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Coinbase*, 599 U.S. at 738 (holding that the "district court must stay its proceedings" during an interlocutory appeal of arbitrability).

Like any other contract, an arbitration agreement can be enforced against a non-signatory using traditional legal doctrines—like "third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 Williston on Contracts § 57:19 (4th ed. 2001)).  Equitable estoppel blocks a plaintiff from "claim[ing] the benefit of [a]

7

contract" while "avoid[ing] arbitration of claims clearly within the ambit of [its] arbitration clause." *Hughes Masonry*, 659 F.2d at 839.

To decide whether equitable estoppel requires enforcing an arbitration clause at this early stage, courts take the plaintiff's own allegations as "the operative facts." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 529 (5th Cir. 2000); *accord In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*, 659 F.2d 789, 795-96 (7th Cir. 1981) (looking to plaintiff's "own allegations" to apply estoppel); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 418 (4th Cir. 2000) (same).

## II. Fitch Even's Claim Against Mr. Sutton Must Be Stayed Under FAA § 3

Equitable estoppel binds Fitch Even to arbitrate under the Investment Agreement. To support its requests for relief from this Court as to Mr. Sutton, Fitch Even claims to be a "third-party beneficiary" of the Investment Agreement, TRO Mot. at 1, and alleges that "Mr. Sutton . . . violated the litigation funding agreement on which Fitch Even relied." Compl. ¶ 88. But Fitch Even "cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." *Int'l Paper*, 206 F.3d at 418 (enforcing arbitration clause against non-signatory because its "complaint . . . alleges that [the defendant] failed to honor the warranties in the [relevant] contract"). Fitch Even has "asserted rights" and benefits that it says are "created by" the Investment Agreement, so that Agreement's binding "arbitration provision . . . govern[s]." *Indus. Elecs. Corp. of Wisconsin v. iPower Distrib. Grp., Inc.*, 215 F.3d 677, 680 (7th Cir. 2000); *see also Oil Spill*, 659 F.2d at 796 (binding plaintiff to arbitration clause where plaintiff "alleged an agency relationship as a basis for its standing in the suit" but tried to "disavow the relationship . . . to defeat the effect of an arbitration agreement").

Mr. Sutton is not personally a party to the Investment Agreement, but that does not matter. Mr. Sutton is an agent of Validity Finance and VF, and it is well established that an

8

agent or employee is protected by the arbitration clause of its principal. *See, e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (holding that individual defendants were entitled to rely on arbitration provisions incorporated into their employers' agreements with investors notwithstanding that the individual defendants were not signatories to any of the agreements); *see also Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986) (agreeing with cases from the Second, Third, and Seventh Circuits holding that "ordinary contract and agency principles" allow "nonsignatories of arbitration agreements" to require plaintiffs to arbitrate claims against them); *Oil Spill*, 659 F.2d at 795-96 (binding agent to principal's arbitration clause). The arbitration clause covers all claims "arising out of or relating to [the Investment] Agreement." Ex. 2 § 15.6. And Fitch Even's claims against Mr. Sutton fit well within that broad language. The Investment Agreement is "part of the factual foundation for [the] claim asserted" against Mr. Sutton, *Int'l Paper*, 206 F.3d at 418; after all, Fitch Even directly accuses Mr. Sutton of "violat[ing]" that Agreement. Compl. ¶ 88. Fitch Even cannot avoid arbitration merely by naming VF's agent (Mr. Sutton) rather than VF itself.

That is all the more true here because Fitch Even's complaint repeatedly conflates Validity Finance, VF, and Mr. Sutton. Fitch Even asserts personal jurisdiction over Mr. Sutton based on his status "as CEO of Validity," Compl. ¶ 9; grounds its fraud claim on Mr. Sutton's asserted misrepresentations, as CEO, about Validity Finance's funds and plans, *see, e.g.*, *id.* ¶¶ 75-85; and even asserts that "Mr. Sutton exercises complete control over Validity." TRO Mot. at 1. Having pleaded away any distinction between Mr. Sutton and the Validity entities, Fitch Even cannot avoid arbitration on the ground that VF, but not Mr. Sutton, signed the Investment Agreement. *See Hughes Masonry*, 659 F.2d at 838-39 (compelling arbitration of

plaintiff's claims against the agent of a signatory; because plaintiff relied on the contract to support its claims, it could not "repudiate it when it works to its disadvantage") (cleaned up).

Nor does it matter that Fitch Even styles its claim against Mr. Sutton as a fraud claim, rather than as a breach of contract. The plaintiff in *Hughes Masonry* did the same thing. It "characterized its claims . . . as sounding in tort." *Id.* at 838. But the Seventh Circuit required it to arbitrate those claims anyway because "[i]n substance," the plaintiff was trying "to hold [the defendant] to the terms of the [contract]." *Id.* at 838 & n.4. So here. Fitch Even cannot hinge its claim against Mr. Sutton on "its asserted rights" under the Investment Agreement while avoiding its arbitration clause. *Int'l Paper*, 206 F.3d at 418.

Even if equitable estoppel did not require Fitch Even to arbitrate against Mr. Sutton, the FAA would still require staying this action pending arbitration because of Fitch Even's separate obligation, under the letter of engagement, to arbitrate its claims against LED Wafer. Under FAA § 3, this Court "shall," upon "application of one of the parties" to the litigation, stay the entire "action" if the lawsuit involves "any issue referable to arbitration." 9 U.S.C. § 3.

Here, the letter of engagement between Fitch Even and LED Wafer requires those parties to arbitrate ████████████████████████████████████ Dkt. 17-20 at 6 (§ 12.1). That means a stay should issue. As the Seventh Circuit and other courts have long held, "Section 3 of the FAA plainly requires that a district court stay litigation where ***issues*** presented in the litigation are the subject of an arbitration agreement." *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990) (emphasis in original); *see also*, *e.g.*, *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004) ("The grammatical structure of [Section 3's stay requirement] would seem to make clear that ***any*** of the parties to the suit can apply to the court for a mandatory stay,

and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement." (emphasis in original)). Fitch Even's claims against LED Wafer certainly arise in connection with the terms of Fitch Even's letter of engagement; indeed, Fitch Even alleges a breach of that agreement. *See, e.g.*, Compl. ¶ 68. So this Court should stay this action under FAA § 3. *See Morrie Mages*, 916 F.2d at 407 ("Thrifty, as a party to litigation involving issues subject to an arbitration agreement, is entitled to a stay under section 3 of the FAA regardless of its status as a party to an arbitration agreement.").

* * *

In seeking this stay, Mr. Sutton does not waive his right to contest this Court's personal jurisdiction over him—a Connecticut domiciliary who works in New York, *see* Sutton Decl. ¶ 2—or the merits of any of Fitch Even's claims or allegations. *See Schacht v. Hartford Fire Ins. Co.*, 1991 WL 171377, at *5 (N.D. Ill. Aug. 30, 1991) (holding that motion for stay pending arbitration did not waive personal-jurisdiction objection). The threshold issue here is whether, having claimed the benefits of the Investment Agreement "[b]y its own allegations," Fitch Even can evade that Agreement's arbitration clause. *Oil Spill*, 659 F.2d at 795-96. The answer is no. Whether bound by the Investment Agreement, the letter of engagement, or both, Fitch Even has triggered FAA § 3's mandatory stay.

## CONCLUSION

The Court should stay this action.

Dated: October 6, 2025

Respectfully submitted,

*/s/ Matthew D. Reade*
Derek T. Ho (#488609)
Matthew D. Reade (#90009717)
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
mreade@kellogghansen.com

*Counsel for Ralph Sutton*